Your Honor, as a second case, I want to call 213-071 on behalf of the Appellant, Mr. Parkers for White. On behalf of the Appellant, Mr. Jarrett, I reject this. Thank you. Mr. White. Good morning. May it please the Court, Counsel. I'm Chris White on behalf of the Office of the State Appellant Defender, representing Mr. Miguel Rico, the Defendant Appellant in this case. On appeal, Mr. Rico alleged five issues upon which he seeks relief. As mentioned in the reply brief, another division of this Court rejected issue number three, the question of whether the trial court properly denied his motion to quash arrests and suppress evidence. Consequently, unless there are questions, I'll focus the bulk of my argument on those three issues that relate directly to his conviction. They are, first, whether his conviction for home invasion should be reversed, where the State failed to present any evidence that the Defendant intentionally caused injury. The second issue is whether his conviction for aggravated kidnapping should be reversed, where the restraint of the complainant during the incident was merely incidental to the property crime. And the third issue that I will be addressing, which is action number four in the brief, is whether the trial court erred in denying the Defendant's motion for mistrial and ordering the jury to continue its deliberations, where the jury advised the Court on four different occasions that it was deadlocked, could not reach unanimous decision, had been given a print instruction, and returned verdicts on three counts that, in fact, were determined by the trial court not to be unanimous. The first issue dealing with the home invasion conviction, the record establishes that during the burglary, an intruder placed both zip ties and duct tape around the complainant, Daniel Hagee's wrists. However, Hagee did not testify regarding a detainee or injury, and the injury being statutorily required for the conviction. The only testimony from Hagee about the effects of the restraint was an acknowledgment during direct examination that there was redness and swelling. The question was asked if the redness and swelling had been present prior to the incident, and can respond to that it had not. Really, this turns on the issue. The statute requires that the State present evidence that the Defendant intentionally caused any injury as an essential element, correct? Correct. So you're saying that the issue is whether or not, even though there might have been some redness, the issue is whether or not the Defendant arguably caused injury intentionally? Yes. Okay. Well, how do you square that with the cases that talk about, I believe that there was a case where there was some type of a redness or swelling, and the Court held that that was sufficient? Well, in those cases, and I think there's two separate things here, in the specific case, if there's redness and swelling and the Defendant testifies that, I guess, he regarded that as an injury perhaps that might meet the test. Here, there really wasn't any discussion by the Defendant or by the complainant at all regarding any injury that he suffered. It was simply, were those, was that risk read prior to the incident, and he said no. It's also true that Defendants are held to have intended the natural consequences of the actions that they performed. In this case, putting duct tape around could possibly. That's probably going to be his argument. Tell us why that wouldn't carry the day, that the natural and probable consequences of one's action wouldn't suffice or wouldn't be synonymous with the intentional requirement of the statute. Well, I don't think it would here. It appears that under the statutory definition of intent, which seems really more to go towards the element of knowledge than intent, but a person intends or acts intentionally or with intent to accomplish a result or engage in conduct described by the statute defining the offense when, and this is the part I think we have here, his conscious objective or purpose is to accomplish that result or engage in that conduct. And in this case, it certainly can't be said that the Defendant or the intruder, whoever bound Hagee's wrists, that the intent was to cause him any sort of injury. The intent was obviously to restrain and not, not to injure per se. But Hagee didn't have both, intent to do both. I mean, if he's really like pulling those zip ties really, really tight intentionally, he could, although here you didn't have that effect specifically with the zip ties because he got loose from the zip ties. And then he put tape on it because he kept breaking free. But yes, I suppose you could, based on the evidence of each of the evidence presented during each specific case, find that. I don't know whether or not whatever this is in the photographs was present prior to the incident. Your briefs, I mean, at least to me on that issue, seem to focus on the sufficiency of the evidence on the injury itself and not necessarily on the mental state issue. I mean, you use the word intentionally, but you really don't, you know, cite any cases on the mental state issue. You don't, you know, elaborate on the mental state issue. It seems to me you're focusing on the injury itself. What are you focusing on here, both? I think it is both. It's more probably the injury itself just because the evidence from the record doesn't seem to suggest an injury here. And, of course, without the injury, there's not the intent. So I think my major focus was on the injury itself because without the finding of that injury, there's not intent. I don't think there certainly was not independent intent. Let me see if I can call out the essence of your argument to some extent. You're saying that the evidence doesn't show, or that the evidence shows that he put the ties on him to restrain him not to cause an injury. Correct. There was no intent to cause an injury. The intent was to restrain only. Correct. Okay. But the redness and swelling, are you saying that's not a sign of injury? It's not sufficient evidence of injury? I'm saying it's not here. I don't think it's too much to suggest that the complainant or the injured party, alleged injured party, should offer some testimony regarding his injury. It's not required to do that. It just has to be evidence in the record sufficient for a rational fact finder to determine the element. So, I mean, if I'm a rational fact finder, I'm hopefully a rational juror sitting there listening to this, and I hear that this person's wrists have redness and swelling, and there's evidence in the record of that, tell me why that's not injury based on the Collins standard. Well, in fact, even the redness and injury, we don't necessarily know what the cause was. You don't have the defendant saying, well, yeah, it was because of, I mean, we probably figure it's probably the duct tape, or probably more specifically, removal of the duct tape that caused it rather than the placing of the duct tape, or possibly even being jarred around by his father taking him upstairs to remove the duct tape. But we don't even know, we don't have the defendant even saying, well, yes, I, or the victim, I'm sorry, the victim stating that, yes, you know, I received this pain because when I was, you know, most of the cases that you get, you have a situation where the complainant is saying, you know, the defendant did this to me, the intruder. He put tape around me. I've had a great deal of pain since then. I've had psychological pain. I've had whatever, you know, the pain may be. And here you simply got the prosecutor asking, well, were your hands red? And the only evidence of that is the photo, which I guess is open to interpretation. They don't appear to be, you know, purple or anything to that extent prior to this incident. And the complaint's sole answer is no. I think it would require a little more than that to show an injury or that the defendant or the intruder intentionally caused injury sufficient for the statute. All right. What about the kidnapping issue? Why should that conviction be vacated? Well, the kidnapping should be vacated. I mean, there's no dispute that Mr. Hagee was confined during the burglary when the intruder bound his wrists and ankles with duct tape. That seems to be pretty well established. But the record does not establish that Hagee was restrained for any purpose other than to facilitate the commission of the burglary of the house. And thus it was incidental to the property crime under the Supreme Court's findings in Enoch as well as the Lombardi-Levy Doctrine. Hagee testified that the intruder placed zip ties around his wrists almost immediately upon Hagee's entrance into the home. Hagee further testified that during the burglary, the intruder moved him no fewer than four times, always keeping him in close proximity to the intruder. He was upstairs in the bathroom for five to ten minutes until the intruder saw that Hagee had freed himself from the zip ties. He then moved Hagee to the bedroom where he had him lie on the bed while he applied duct tape, which is also the room where the safe was removed from as well as other items were sought there by the intruder. The intruder then led Hagee to the basement where he was in one room for five to ten minutes, presumably while that room was being examined, and then moved into another room where he was left without until he was finally discovered. But there's no evidence here that he was kidnapped or secretly confined for any purpose other than to sort of keep an eye on him and in connection with the property crime here. The state argues that you forfeited that issue. Well, we would say that we obviously disagree with that to the extent that it could be found we did. We would argue that it's an underplayed error. He certainly should. The facts simply don't support a kidnapping here. The factors in Smith show the four factors, considering duration, whether it occurred during the commission of a separate offense, whether it was inherent to the separate offense. It posed a significant danger independent of that of the separate offense. None of them were really met here. He was never removed from the home. Hagee was never removed from the home. He was moved to places from where the intruder sought property. There's no evidence at all that the restraint posed additional threat beyond that that was inherent in Burberry. He wasn't – he didn't have his face bound. He didn't in any way have tape over his mouth to prevent him from speaking out. And, in fact, his father was able to find him relatively quickly upon entering the house. Now, you're not saying that the technical elements of kidnapping would not be met here absent the other independent offenses? Correct. Absent the other offenses. He's confined him in the house, the purpose of which is to hide him from the public view, obviously. But you're saying that this case turns on the fact that under the doctrine of this being part and parcel of another major offense, that those doctrines would preclude this from being a separate conviction. Correct. Okay. And, again, Lombardi, the cases themselves, which I believe it was Lombardi himself was actually a robbery and not a kidnapping, much like this one. And much like the Lombardi case, this case, which, although is not a greater flat penalty, it does put him at risk of receiving greater time, which is 85 percent truth in sentencing. We're going to agree with your argument on one of these two convictions and not the other. New sentencing hearing or simply vacate the conviction and sentence? New sentencing hearing on? The remaining sentences. Well, I mean, I think independently, I mean, there should be a sentencing hearing. I think that's certainly excessive. But, of course, if one of these were to be vacated, then he's left with a 30-year and not the remaining consecutive 30-year sentence. So, I mean, without knowing specifically the situation, it's kind of hard to make a determination. Would it be more appropriate, though? Because, you know, do we know what the trial judge took into consideration when he imposed the 30-year sentence? Did he consider the kidnapping as his sort of inherent factor or an aggravating factor? We don't really know that, do we? Well, that's true. Right. I mean, that's kind of the problem with both of these cases because there does seem to be a lot of overlapping crimes here with the sort of relatively simple or straightforward action. Was the overall conduct taken into consideration, including the kidnapping, in arriving at the sentence, or wasn't it? I think only the trial judge. Only the trial judge, yes. He did not provide much information as to how that was reached. In fact, there wasn't any information provided as to how he arrived at consecutive versus concurrent sentences, other than he found it to be within his discretion and seemed to be sufficient for his determination there. So we'd ask, obviously, that the court reverse his aggravated kidnapping conviction. The remaining issue there is then is whether the court erred when it denied his motion for mistrial and ordered the jury to continue its deliberations where the jury had advised the court at four different times that it was deadlocked and was given a print instruction and were to return verdicts on three counts that the court determined to be non-unanimous. This really was a relatively uncomplicated case. It's hard. Each side presented three testimony, witnesses' testimony of three different witnesses. Yet the jury, given sort of the straightforward nature of these issues, deliberated over two days, 18 hours, and frequently indicated that it was deadlocked and could not reach a decision. When the jury said that it was deadlocked on some of the charges but had reached a decision on some of the other charges, trial counsel, defense counsel, asked that the case be held over and let them deliberate tomorrow. Correct? At that point, yes. But at that point, we didn't know that those, in fact, were not going to be unanimous. That was found later. So at the time, it's assumed that these are going to be unanimous decisions without problems, which there apparently were problems with one particular juror. At that point, when the judge knew that and then sent that one particular juror back in to deliberate, given the fact that there seemed to be some indication that the juror was unfriendly to the defendant or was not representing the defendant's perspective, it does seem odd that you can then send the defendant back after several hours at about 10 o'clock on a, what appears to be a Friday night but a weeknight, and come back within 40 minutes with unanimous decisions. I don't think it takes a lot to see what probably happened back there. We don't engage in speculation about what goes back in the jury room. We can't use that as a reason to come to a result. No, but I think it does indicate that there's a level of coercion here that was caused by the trial court's action there. Let me just break it down for a second. You conceded that at least at one point the attorney urged the court to allow the jury to continue deliberating, right? Sure. Well, certainly that can't ever be the basis for an error for the court candidate. If the attorneys want the court to do something and the court and its discretion goes along with it, how could that ever be considered error later? Well, because of what happened after that. At the time, we didn't know about the... Yeah, but you can't look at this in hindsight. The question comes back. The jurors, you know, apparently are having trouble reaching a verdict. The judge does what he normally does. He calls the parties up, the attorneys up, and they say, let's let them continue deliberating. How can that be the basis for error? Well, at that time, the juror did not allow them to continue to deliberate. He came in and he accepted the verdicts as they were until it appeared that one of those verdicts was not unanimous. But he didn't find that out until the juror came up, right? Didn't he find out in the process of polling the jury? He found out in the process of polling the jury that there was some question. The record seems very unclear about what exactly happened there. There was some sort of indication made by the juror. That it was not his verdict. That it wasn't his verdict, a stop, a raise his hand, or something. So what would you have suggested the trial judge does in that circumstance? Well, he should have interviewed the juror as he did, but at that point, I think it should have been a mistrial. Because you've gotten four times that it's been sent back, once after a prison instruction, and then you finally get a return on the jury. And it turns out that even that decision isn't unanimous. So it's pretty clear from the record that this jury cannot reach unanimous decisions on the counts. And that was when the motion for mistrial was made? It was, I believe. I believe so. So do you have any case that supports the notion when a juror comes up, and it's unusual. I can tell you, I've been trying a lot of cases where a juror comes out and all of a sudden one of them says, wait a minute, that's really not my verdict, okay? So if that happens, where's the case that says that there's an automatic error if the juror comes to judge and sends them back to deliberate? Well, it may not even be automatic if that happened after one hour or five hours. I mean, it's going to be a case-by-case basis, certainly. But the situation in this case where you've got one day of deliberations or a few hours, roughly, on the first day of deliberations, and then they come back and they argue into the night of the second day, having continually sent notices back saying that they couldn't reach a decision or were deadlocked, were then primed, were then still said they couldn't reach a decision, except they could finally reach a decision. So the criterion is going to be, considering the totality of the circumstances, it should have been obvious to the trial judge that this jury was never going to be able to voluntarily arrive at a verdict. Correct. This particular jury, right, in this particular case. Right. So we would ask, then, on this issue, that this, too, be vacated and demanded that it be dropped. Thank you, Mr. White. We'll have time for one more question. Thank you. Mr. Jacobs, you may proceed. Good morning, Your Honors. I'm Barry Jacobs on behalf of the people of the state of Illinois. As counsel indicated, this court addressed the issues raised in arguments three and five in another opinion of holding a motion to suppress and finding no error in sentencing. So I, too, will confine my arguments to the issues one, two, and four, the first issue being whether or not the evidence shows beyond a reasonable doubt that the defendant intentionally caused injury to Daniel Hagee in violation of the home invasion statute. Hagee makes the argument, hey, look, it would appear that, really, his intent, his sole intent with these zip ties was to keep him from interfering with him committing, carrying out the rest of the burglary there and securing his detention. And so how do we say that there was an intention to inflict injury? Well, as Your Honor is aware, intent is most always inferred from the circumstantial evidence in the case. In this case, we had testimony of Daniel Hagee, that he returned home, discovered this individual in the home, and he was forced to have his hands bound with zip ties. He was placed in a bathroom at some point. He freed himself, or they came loose, the defendant in this case, then took him into the bedroom, re-zipped tied his hands behind his back, and duct taped. So it's a safe position that it's a reasonable inference to draw that, at least on that second occasion, there was the intent to the knowledge to intentionally, or to injure, not to tighten. Well, now, would knowledge be enough? I mean, I don't know, would knowledge that this might cause injury, would that suffice on the home invasion statute? I don't know that I'm understanding the question. Well, the statute says that in the course of the home invasion, there has to be an element of showing that the defendant intended to intentionally inflict injury. Yes. It doesn't say what acts with intent are now. It says intentionally inflict injury. So, you know, and we're not, we're talking about constitutional provisions, criminal provisions, so we're not splitting here. Is it the evidence was that the defendant knew it might cause an injury? Would that be sufficient if the prior effect felt that way, or would it have to be, were he intended, by putting zip ties on him, to cause injury? The state's position would be that the knowledge, however, I do think the evidence is clear enough in this case that he intended to cause an injury when he, again, zip-tied him. Well, how do you distinguish his argument, though, and that's the over-argument? He's saying, look, he intended to restrain him, so as a result of the restraint, he was injured. But his intent was not to injure him in any way, his intent was simply to restrain his movement. The question is whether or not a rational fact finder could have found this element. It's the state's position that based on the circumstantial evidence of this infrequent assault being retightened, that this intent element could have been inferred by a rational fact finder. Whether or not it bears out, I mean, we're not really trying to defend it, but at trial, a rational fact finder could have inferred that this intent, that he may have had simultaneous intents to both bind him and subdue him, but also when he tightened and taped to injure. There's no question there was an injury in this case. Dan Hagee testified that he had redness and swelling around his both wrists, left and right. In addition to that, Officer Fregale, forgive the pronunciation, identified photos that he had taken that night of Dan Hagee, of his wrist, and testifying, in fact, that there was missing hair and redness and swelling about the wrist, so there's no question there... But he ultimately sustained some injury. Yes, there's no question. The question is whether or not it was intentional within the meaning of the statute. And your argument, again, is to summarize that that's really... The question is whether a rational prior fact could have found that element beyond a reasonable doubt. Correct. Inferring that element from the totality of the circumstances, which is ultimately our decision. But what about this kidnapping? Can I just ask one more question about this? Sure. Did you read the defendant's brief, the argument to be, to relate to the sufficiency of the evidence regarding injury or regarding mental state? Mostly regarding the evidence of injury. I didn't see anything really related to any case law that you cited regarding mental state. The case law is clear. It's regarding the injury, the Woods case. I know. I read the brief. What I'm getting at is what was actually raised in the defendant's brief and how you read that. You read that to be more of a sufficiency evidence. Regarding the injury. Correct. And I believe the Woods case where the defendant applied some pressure to the victim's arm and she experienced pain was found to be sufficient evidence of injury. Okay. Thank you. Turning to the second point, the second issue rather, the kidnapping, again, the defendant's argument turns on whether or not this was a secret confinement. This was charged as aggravated kidnapping based upon the defendant concealing his identity with a, I believe, a rag over his mouth. And it's the state's position that the secrecy of, or the secret confinement, again, can be found, conferred, if not. I think he sort of tacitly conceded that, unless there was the elements there. What I think the crux of this issue is, and I think it's significant, is the Levy-Lombardi Doctrine says conviction for kidnapping cannot be sustained when the conduct was in the course of an incidental to another crime. Now, since the defendant is there in the house committing a crime before Daniel even arrives, correct? Correct. How is the kidnapping not in the course of committing the burglary? He was carrying out the crime without anybody being there. Obviously, his intent wasn't, initial intent could not have been to kidnap Daniel because he started the offense before Daniel ever got there, right? Correct. So how was it not incidental? I guess I could answer that with a question. If you look at the Enoch case or the Eiler case, both of these cases involved another crime. The court in both cases, I believe mostly in Enoch, rejected the Lombardi-Levy Doctrine on the basis that, well, looking at the factors that show, actually, the confinement. Those cases, much like the defendant in this case, makes the argument that in any robbery, there would be the element of subduing or removing the defendant. That actual argument was rejected, I believe, in Enoch, where the defendant argued that in any murder, there would be the element of subduing. So getting to your question, just because he's already committing the offense does not negate the fact that he then secretly confined Dan Hagey within the meaning of the statute. If we look at the factors enunciated in Smith, this was a one- to two-hour detention. This young man, Mr. Hagey, was dragged through his house with his hands zip-tied from the upstairs to the downstairs. He was to be located in a basement room, which was furthest from the staircase, furthest from being discovered. In addition to that, to accomplish any of these crimes, burglary, as Your Honor indicated, he was already in the process of burglarizing the house. He did not need – it was not – But that's a distinguishing factor from Eiler, wasn't it? In Eiler, the court found that he was taken. The kidnapping occurred so he could commit another offense on him, on the victim. That's not the case here. The kidnapping wasn't to commit an offense. The kidnapping was simply to restrain him while he carried out the rest of the offense. Correct? Correct. I don't know that Eiler made this distinction that it was to carry out the murder.  Well, the confinement was not incidental to the murder, was it? Correct. And the defendant in that case had lured, I believe, a male prostitute to his home. And the court found that that clearly showed that he had a plan to do something other than murder him. But here it couldn't be said he had a plan because he was carrying out the burglary when nobody was there. He had a plan to secret him away. He had a plan to – No, he started out the offense of the burglary, the home invasion. There was no plan to restrain anybody. Correct? That's correct. However, there's no indication that this confinement was necessary to accomplish any of these offenses. Isn't the critical distinction, though, between this case and, on the other hand, Eiler and Enoch, in this case a crime had already begun. Yes. Which is the burglary or – No, just the burglary. Where in Eiler and Enoch the crime began with what became the kidnapping. The defendant in each of those cases makes sure that the victim gets to a certain position, a certain location, and then ultimately at a later point kills him. That distinction can be made. The distinction can be made that those cases were both charging, kidnapping, or aggravated kidnapping based upon bodily harm committed to those individuals. After they get to that location. After they got to that location, yes. But it is the State's position that the secret confinement can be found from those factors that Smith enunciated, the duration of it, the fact that he was dragged through the house and placed in a secret location. I believe it's the Phillips case says that secret confinement can be found from the secrecy of the location where the person was found. How does this differ from the actual example given in the Levy case out of New York? The example of an incidental kidnapping, incidental to another crime, is where a victim is tied up and moved to another room during a bank robbery. How is this different than that? Well, the State would draw the distinction that this, again, is based on the secrecy of the location. To say that Daniel Levy's father easily found him when he later came home, the defendant had no way of knowing that. The defendant secreted him away to a secret location for the purpose of. You're making a good argument, but you're characterizing this in terms of whether or not there was a confinement and not really addressing whether this was considered to be incidental to another offense under the case law. I don't think your opponent is going to get up and really argue that he wasn't confined at all. No, he conceded that. Okay, so that element, I think, is probably off the table for purposes of startling. It's whether or not this was, under the Levy-Lamari factor, incidental to another offense. And I'm having a hard time with your argument distinguishing it from incidental. It's the State's position that this was not inherent in the theft, the burglary. So if at any time the crime is being committed and somebody comes home, if they're restrained at all, then there would be a kidnapping? Not necessarily. I mean, this young man was dragged, as I said, from a place where he was in a bathroom, rebound, and then dragged down the stairs or on his butt, apparently, into first one room in the basement, which would indicate or I guess would support the argument that he was just being restrained. But then he was placed in a separate room, the room furthest from the basement, furthest from being discovered. The fact that he didn't have a gag in his mouth or was later easily discovered by his father is really not part of the inquiry. When was the confinement not incidental to the burglary? I'm sorry? When was the confinement, when did it become not incidental to the burglary? The State would maintain that at the very least when he was placed in that last room. So it's incidental when you first cuff him, correct? It could be incidental. I'm not conceding that it was incidental at any time. But I'm saying that certainly at the very last placement in that secret room or that room that's at least furthest from the stairs and least capable of being discovered, that would rise to the level of secret confinement. Moving on to the, I believe it's the fourth argument, whether or not the court abuses discretion in denying the motion for mistrial. It's the State's position, of course not the State would point out that, again, this is an abuse of discretion standard. The court had wide latitude in determining whether or not these jurors were able to reach a verdict. It's significant, and I pointed out in my brief, that up until hour 16, defense counsel was in agreement that the jury continue to deliberate. In fact, I think three or four times each time a question arose and the court consulted with counsel, defense counsel said, we want this jury to decide this case. And what happened at hour 16? Hour 16 was around the time, I'm not going to read it, but the jury, I believe, sent a note saying that it had made some progress and perhaps had signed one verdict form. At that point, there was a discussion about a premed instruction being issued. The defense counsel opposed that and asked that the jury be admonished to continue to deliberate. But the court at that point said it would issue the premed instruction, and if the jury could reach a verdict, it would declare a mistrial after those counts it could reach. So that's what happened at hour 16. This entire deliberation lasted only 18 hours. So we can see that after the premed instruction, I think the court at that point found that there had been progress, despite the length of time and, I guess, the apparent labor the jury had undertaken. The court did make a finding that there had been progress in deciding this case and issued the premed instruction, saying that it would declare mistrial on the counts that the jury couldn't reach a verdict on. When the jury came back and returned partial verdicts on three counts, the finding of guilty on the residential Brooklyn charge and not guilty on one of each, the home invasion and the aggravated kidnapping, the court apparently noticed that one of the jurors had not raised his hand and pulled the jury and determined that this was not a unanimous verdict. At that point, the court announced it would not accept this rendering of verdict for not being unanimous and told the jury to continue to deliberate. The only question I have about this particular issue is the comment that juror 326 made, I find to be pretty ambiguous. What's your take on it? It's the state's position that it was ambiguous. Now, I think the court later pointed out that there was no indication by juror 326 what his vote was. We can, in hindsight, look back and say, oh, he obviously had voted for the residential Brooklyn conviction. But this could have gone either way, I guess in hindsight also. When the jury continued to deliberate with that simple phrase from the judge, they could have come back and said he's not guilty on anything. The court had not accepted the verdict. But I do read that comment as just ambiguous. And I think, as I said, the court did make the finding that, you know, because there's some argument about it, there was no position taken by juror 326. Thank you, Mr. Jacobs. Thank you. Mr. White, rebuttal, are you? Just very briefly on that, the last point there regarding the statement of the juror. I think it is pretty clear from the record that at that time it is an ambiguous statement. I don't know what that means. I don't know if anybody knows what that means. But I don't think it's the ambiguity of the statement that matters or the statement given by the juror so much as the fact that he indicated that he couldn't agree. And up until Hour 16, it's correct that the defendant agreed to continue this. It was only after the prim instruction was given and they still had no unanimity that I believe the error occurred at this point, particularly after the non-unanimous verdicts were given. Well, how is that? If you have a juror who says this vague statement like, I signed that form assuming the defendant could not be convicted unless all the charges were put together and agreed upon, how is that an abuse of discretion to say go deliberate more? What should he have done? Well, at that point, because that's where I think the time considerations come in, the fact that this is two hours after prim, they're still just not getting it for whatever reason, for whatever reason that that juror stated. We don't know really what was in his head at that time. I guess there's later testimony or statement by the court that it was he wanted more convictions, I guess. But at that time, it was very ambiguous. But at that time, he still should have said that they've deliberated long enough that they obviously can't reach unanimous decision. Regardless of what that means, it definitely means it's not unanimous. So at that point, he should have. So did that mean they were deadlocked on those three that they reached a verdict on? I mean, when trial counsel asked for a mistrial, was he asking that the judgment enter on the not guilty verdicts, but I want a mistrial on all the other ones? I think he wanted a mistrial on all of them, even the not guilty. I believe it was residential burglary was the first not guilty. No, residential burglary was conviction. Or conviction, rather, right. And then the two not guilties were the home invasion with a knife. They were weapons offenses. But that's cluing the judge in. When that juror makes this ambiguous comment about all the charges being put together, then that clues the trial court into saying, well, then clearly these jurors are deadlocked on all charges, including the three that they just reached a verdict on. It appears so, sure. Because we don't know from that particular juror what that means, other than they weren't unanimous decisions. All three of them. We don't even know really which one he didn't have a problem with, just that form, which is also pretty ambiguous. So there would have been more than one form there, certainly. So I think at that point, a mistrial should have been granted, because there was no way to really have any faith in the confidence of the jury who was going to come back with unanimous decisions at that point. Counsel made a statement, basically a statement that said that you were bound by the decision of the other court with respect to the issue that I didn't raise and sentenced. And I just quickly maintain that we don't think that sentence is something that has been decided before. The second time, these other offenses were, but certainly not the sentence here. So I think sentence is certainly something that can be considered in this case. Regarding the kidnapping, I think it's true that any robbery containing a restraint might include the elements of kidnapping, but it just wasn't here. In the beginning, in fact, as Justice Hudson pointed out, he, in fact, didn't secrete him in the beginning. He really only restrained him. He moved him really with him, put him into different rooms, adjacent to the rooms or in the rooms that he was actually receiving property from or searching for property in. The restraint here, I think, was necessary to effectuate the offense because the victim here and the defendant or intruder either way were certainly, as described by Hagee, were certainly about the same age, about the same size. This is somebody who probably could have overpowered him, or certainly the evidence would suggest that. I think there's still a problem here with the secret location. There's really no evidence here that he was put in a secret location. He was left in the basement, which was really the last place that he went. I don't think that because he didn't bring him, drag him back up the stairs, means that he left him there with the intent of not being discovered or the elements of kidnapping that would be separate from the elements of the basic property crime. Thank you. We thank both attorneys for their arguments today. The case will be taken under advisement, and we are adjourned. Thank you.